IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRADLEY CARL DEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-886-D |
| | ) |
| STRYKER EMPLOYMENT | ) |
| COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment and Brief in Support [Doc. No. 49]. Defendant Stryker Employment Company, LLC (Stryker) filed a Response [Doc. No. 60], and Plaintiff filed a Reply [Doc No. 64]. The Motion is fully briefed and at issue.[1]

## FACTUAL BACKGROUND[2]

This case stems from Stryker's termination of Plaintiff Bradley Carl Dean's employment. Plaintiff spent approximately 15 years working as a medical sales rep for Stryker, while also serving as a member of the Oklahoma Army National Guard. Plaintiff's service with the National Guard required him to take leaves of absence from Stryker so that he could complete training or, on multiple occasions, active National Guard service.

---

[1] The Court will address Stryker's Motion for Summary Judgment [Doc. No. 48] via separate order.

[2] This statement includes material facts that are supported by the record and not opposed in the manner required by Fed. R. Civ. P. 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Fed. R. Civ. P. 56(e)(2) and LCvR56.1(e). Further, any fact stated by a party that is not supported by the party's citation to the record is disregarded.

In addition to his military-related leave, Plaintiff also took two medical leaves of absence while working for Stryker—one for injuries sustained during a helicopter crash and one for in-patient rehab for alcoholism.

In November of 2021, a female Stryker sales rep informed Stryker's human resources department that Plaintiff had allegedly made a vulgar comment about her to a Stryker customer. Stryker's employee relations department opened an investigation and allegedly substantiated two additional misconduct allegations against Plaintiff. Ultimately, Stryker determined two of the allegations were actionable—the previously mentioned vulgar comment and an incident where Plaintiff allegedly sent a Stryker customer a photo showing part of his genitals. Plaintiff initially denied making the vulgar comment and described the photo as a joke. Stryker disagreed and, on December 13, 2021, terminated Plaintiff's employment with the company. This lawsuit followed.

The instant Motion does not touch on the legality of Stryker's decision to terminate Plaintiff's employment, but instead focuses on Plaintiff's post-termination efforts to secure employment—*i.e.*, Plaintiff's efforts to mitigate his damages. After Stryker terminated his employment, Plaintiff "started right away calling friends and family" and "old buddies, old medical reps, anybody that might have a distributorship." Although the timing is unclear, Plaintiff applied to positions at Rx Medical and Zimmer, and he also "[l]ooked at Antares Health."

Aside from his unsuccessful applications to Rx Medical and Zimmer, Plaintiff actually secured various forms of post-termination employment. First, Plaintiff spent time from February 2022 to June 2022 selling cleaning supplies door-to-door. Plaintiff also tried

his hand at selling life and health insurance through BCD Consulting, LLC—an entity he founded. From January 2023 to June 2023, Plaintiff worked as a runner for Vic Med, LLC, and, in June 2023, he eventually secured a distributorship position at CONMED Corporation.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the non-movant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* Fed. R. Civ. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

Plaintiff seeks summary judgment on Stryker's failure-to-mitigate defense for two, independent reasons. First, Plaintiff argues summary judgment is appropriate because Stryker failed to plead the failure-to-mitigate defense in its answer. Second, Plaintiff argues summary judgment is appropriate because, even if the Court were to consider the merits of the defense, Stryker fails to produce sufficient evidence as to either prong of the failure-to-mitigate analysis. The Court addresses each argument in turn.

**I.  The Court allowed Stryker to amend its answer and assert a failure-to-mitigate defense, thus rendering Plaintiff's first argument moot.**

The Court need not spend much time on Plaintiff's first argument, which is premised on Stryker's failure to plead the failure-to-mitigate defense in its original answer. Recently, the Court allowed Stryker to amend its answer and assert the failure-to-mitigate defense, *see* 3/4/2025 Order [Doc. No. 66], and Stryker did so, *see* Stryker Am. Answer [Doc. No. 67] at 8. Therefore, Plaintiff's argument is moot.

**II.  Stryker presents minimally sufficient evidence to carry its burden as to its failure-to-mitigate defense.**

"Unquestionably, wrongfully discharged claimants have an obligation to use reasonable efforts to mitigate their damages." *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980). A plaintiff need not "go into another line of work, accept a demotion, or take a demeaning position." *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982). But he must not "[refuse] a job substantially equivalent to the one he was denied." *Id*. at 232.

4

Substantial equivalence "involves more than just similar work—it considers such factors as pay and benefits, promotional opportunities, job responsibilities, working conditions, comparable hours, distance from home, dangerousness, and comparability of status." *Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1211 (10th Cir. 2021).

Stryker, as the former employer, bears the burden of proving Plaintiff "did not exercise reasonable efforts to mitigate damages." *McClure v. Ind. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000). "To satisfy its burden, 'the [employer] must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.'" *Id.* (quoting *Sandia Corp.*, 639 F.2d at 627).

### A. Stryker presents minimally sufficient evidence tending to show there was at least one suitable position, and perhaps more, available.

Plaintiff argues that "Stryker has produced no documents and listed no witnesses to testify as to suitable positions . . . ." Pl.'s Mot. Summ. J. at 5. Instead, Plaintiff continues, Stryker relies exclusively on its retained expert, David R. Payne's, opinion "that Dean should have found comparable employment within 23-52 weeks." *Id.* at 5-6. But reliance on Mr. Payne is insufficient, as Plaintiff contends Mr. Payne "admits he cannot identify any specific positions that were actually available to Dean in 2022 or going forward" and "disclaims any opinion about whether Dean exercised reasonable diligence." *Id.* at 6.

In response, Stryker points to Plaintiff's negotiations with Rx Medical, "a medical supplier operating in Oklahoma, regarding a potential employment opportunity as a sales

5

representative." Stryker Resp. at 16. Stryker cites to Plaintiff's deposition testimony, in which he stated that Rx Medical was an attractive option because it "mirror[ed] exactly what [he] was doing [at Stryker]." *Id.* According to Plaintiff's testimony, he met with Rx Medical "[a]t least 5 or 6" times, but the negotiations died because he asked for too much money. *Id.*

Upon careful consideration, the Court finds that Stryker has presented minimally sufficient evidence—when construed in its favor as the non-movant—to carry its burden regarding the availability of suitable positions. Plaintiff contends the Rx Medical position does not qualify as an "available" position because "no position . . . ever materialized." Pl.'s Reply at 3. But that appears to put the cart before the horse, and it strikes the Court as unlikely that, just because Rx Medical never formally offered Plaintiff a job, a job was not available, or at least potentially available. Indeed, Plaintiff met with Rx Medical recruiters "[a]t least 5 or 6" times, which by itself lends credence to the notion that even Plaintiff believed a job with Rx Medical was a real possibility. At the very least, the evidence regarding Plaintiff's interactions with Rx Medical is sufficient to let the jury decide the issue.[3]

As for suitability, the Court likewise finds that Stryker has presented minimally sufficient evidence to let the jury decide the issue. Plaintiff emphasizes that Rx Medical would have paid less than he received at his former position with Stryker. *See id.* at 4-5.

---

[3] The record is unclear regarding the availability of positions at Antares Health and Zimmer. Plaintiff states he "looked at" a potential position at Antares Health, but he definitively states he "applied" for a position at Zimmer. *See* Pl.'s Mot. Summ. J. at 3.

That may well be true, but compensation is only one relevant factor (albeit an important one) in determining whether a position is suitable. *See Hayes*, 12 F.4th at 1211. And despite the apparent fact that Rx Medical would have paid less, Plaintiff admits that he was "asking for too much money" for a job that otherwise "mirror[ed] exactly what [he] was doing" at Stryker. Stryker Resp. at 16. At bottom, and with what appears to be a rather undeveloped record regarding the suitability of the Rx Medical position (or any other available position), the jury should decide the suitability issue.

      **B.**      **Stryker presents minimally sufficient evidence tending to show that Plaintiff failed to use reasonable care and diligence in seeking suitable positions.**

Plaintiff argues that, even if the Court advances to the second prong—whether Plaintiff used reasonable care and diligence in seeking a suitable position—Stryker "has not produced evidence of Dean's failure to exercise reasonable diligence." Pl.'s Mot. Summ. J. at 7. To the contrary, Plaintiff argues, the "evidence shows that Dean has undertaken substantial efforts to try to replace the wages he lost because of his termination from Stryker." *Id.*

In response, Stryker contends there is conflicting evidence as to whether Plaintiff—an "excellent salesman"—gave an honest, good-faith effort to find suitable positions. Stryker Resp. at 17-18. Although Plaintiff reached out to various contacts, and ultimately did work numerous jobs, Stryker points to Plaintiff failing to submit a formal application to Rx Medical, along with his allegedly poor performance at the jobs he did acquire. *Id.* at 18-19.

Upon careful consideration, the Court finds that Stryker has presented minimally sufficient evidence—when construed in its favor as the non-movant—to carry its burden regarding whether Plaintiff used reasonable care and diligence in seeking suitable positions. As an initial matter, the Court agrees with Plaintiff that Stryker's focus on Plaintiff's lack of monetary success in post-termination employment is misplaced. The inquiry is instead whether Plaintiff made a "reasonable and good faith effort" to find suitable positions—not whether he was ultimately successful in a specific position.

Even so, the evidence is not so one-sided as to take the determination away from the jury, at least at this point.[4] Although Plaintiff contacted "old buddies, old medical reps, anybody that might have a distributorship," the extent of those contacts is unclear from the record. If Plaintiff cold-called an old friend one time, left a voicemail, and never followed up, a jury could reasonably conclude that Plaintiff did not make a reasonable and good faith effort. On the other hand, if Plaintiff repeatedly called industry contacts asking about job openings and consistently followed up with those contacts, a jury could reasonably reach the opposite conclusion.

The same is true for Plaintiff's commission-based employment. Although Plaintiff's success, or lack thereof, associated with that employment is not dispositive, the nature of the employment itself certainly goes to whether Plaintiff made a reasonable and good faith effort.[5]

---

[4] Of course, Plaintiff is free to raise the issue at the Rule 50 stage of trial.

[5] In other words, and by way of example, if a Fortune 500 executive is terminated and later accepts a job paying $10 per hour, it can hardly be said that the individual made a reasonable and good faith effort to secure a suitable position. To this end, Plaintiff's interactions with Rx Medical appear

## CONCLUSION

"Mitigation of damages is a fact-intensive issue and summary judgment is rarely appropriate. This case is no exception." *Carrasco v. Centura Health Corp.*, No. 19-cv-00357-LTB-KMT, 2021 WL 4913983, at *5 (D. Colo. June 18, 2021).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment and Brief in Support [Doc. No. 49] is **DENIED**.

**IT IS SO ORDERED** this 5th day of May, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

relevant. Although Plaintiff would have made less money at Rx Medical, as compared to Stryker, it is unclear how much less. And, despite the lesser pay, if the position otherwise "mirror[ed] exactly what [Plaintiff] was doing" at Stryker, a jury could reasonably conclude that he turned down a suitable position. *See Ford Motor Co.*, 458 U.S. at 232 (holding that a plaintiff "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied").